[No. 32936. Department One. October 15, 1954.]

THEODORE VANDERMEER et al., *Appellants*, v. LOGAN I. BELK, *Respondent*.[1]

[1]Reported in 275 P. (2d) 436.

E. *Robert Fristoe* (*William J. Millard,* of counsel), for appellants.

*O'Leary, Meyer & O'Leary,* for respondent.

MALLERY, J.—On September 7, 1948, W. H. Jones and wife, being the owners of a certain tract of 1,022½ acres of land on Hartstine Island, entered into a contract of sale thereof with Harry W. Smith and A. C. Belk as buyers. The contract contained the following "clause":

". . . buyers are to be permitted to remove timber from above property, but buyers agree that purchasers of timber will pay the purchase price directly to sellers until full purchase is paid . . ."

The contract contemplated the removal of timber by the purchasers without restrictions as to kind or amount, even though the sellers retained the legal title to the land. The instant case is concerned with the *title* to certain Christmas trees on the land in question. It is not concerned with the financial arrangements of the parties or of their successors in interest.

It is clear that the buyers, A. C. Belk and Smith, had the right to remove the Christmas trees under the instrument referred to above. Thereafter, A. C. Belk acquired Smith's interest in the contract, and the Jones' sold the property, subject to the contract, to Theodore VanderMeer.

On March 10, 1950, Herb Jewell bought the merchantable timber, defined as "all timber eight inches at base stumpage," which, of course, did not include the Christmas trees. VanderMeer and A. C. Belk, who, between them, held both the legal and equitable title to all the timber and the land, joined in the execution of the instrument of conveyance. The financial arrangements between the three parties thereto are not here in question. The instrument did not purport to convey A. C. Belk's interest in the Christmas trees to VanderMeer, which, by the definition of merchantable timber, were excluded from the joint sale to Jewell. A. C. Belk's existing title to the Christmas trees, under the original contract of sale, was thus undisturbed, except that his

agreement to resell the land to VanderMeer fixed a terminal date for removal of timber.

Thereafter, Jewell and A. C. Belk rescinded Jewell's contract without objection by VanderMeer. Whereupon, A. C. Belk assigned all of his right, title, and interest to the timber on the land in question, to Logan I. Belk. Logan I. Belk formed a partnership with one George H. Berger for the logging of the timber, but it terminated in litigation between them, which was settled by Logan I. Belk assigning the Christmas trees to Berger. Berger removed the Christmas trees prior to the terminal date mentioned above. This was done with the knowledge of VanderMeer and without any protest at the time.

Plaintiffs VanderMeer and wife brought this action against George H. Berger and Logan I. Belk for the value of the Christmas trees removed from the land by Berger. Berger was never served and, hence, never became a party hereto.

VanderMeer attached the equipment and logs of Logan I. Belk, who cross-complained herein for wrongful attachment, alleging that it prevented him from removing one hundred thirty thousand feet of timber prior to the terminal date.

The trial court dismissed the action of plaintiffs and gave defendant Logan I. Belk a judgment for twenty-four hundred dollars on his cross-complaint. Plaintiffs appeal.

█ The appellants make five assignments of error. The first and fourth assignments of error, which are directed to findings of fact made by the trial court, will not be considered because they do not set out in their brief the part of the findings objected to as required by Rule on Appeal 43, 34A Wn. (2d) 47, as amended, effective January 2, 1953.

█ Appellants' second assignment of error is:

"The trial court erred in making and entering Finding of Fact Number VIII which is as follows:

" 'The court further finds as a fact that the parties had agreed that the Christmas trees on said real estate were to be the property of the defendant Logan I. Belk and that he could remove said Christmas trees if he so desired.' "

This assignment is without merit. The appellants have not shown anywhere in the record that they had title to the Christmas trees, and indeed the contracts admitted in evidence show the contrary. This is sufficient to answer the assignment. However, the record sustains the trial court's finding of fact as to an agreement between the parties, in regard to the Christmas trees.

Exhibit No. 14, being a letter written by VanderMeer to Logan I. Belk, said, among other things:

"The trouble centers on the Christmas trees on the Hartstine land, the trees to which I unintentionally gave you some sort of claim in the memorandum hurriedly written in Portland a few months ago.

"It occurred to me that, though George Berger did verbally relinquish claim to the small trees, you never did, verbally or otherwise. My position is that if any Christmas trees are removed from the land except under my authorization and to my profit any agreements I make with you in the future must be carefully considered with all conditions plainly in writing and designed, if possible, to recover losses sustained through my Portland carelessness."

Appellant VanderMeer testified on recross-examination as follows:

"Q. Kindly answer the question I asked you. I asked you if you ever made this statement to Mr. Belk or any of these witnesses here in the courtroom to the effect that you wished that you had retained the Christmas trees on this property rather than take $250.00 from Mr. Belk for the extension that you granted, do you remember making any such a statement to anyone? A. I am trying to remember. I can't say that I do remember it. It is involved in my memory with other matters. Q. Do you deny making that statement, then? A. No, I don't deny making it. I may have made it. Q. As a matter of fact, you considered all the time that Mr. Belk did have the right, under the agreement you had entered into, to take the Christmas trees off that property, did you not? A. I thought he had that right, that is right. . . . Q. Mr. VanderMeer, you stated that you never gave anyone consent to take those Christmas trees off that property, is that correct? A. That is correct. Q. Did you ever tell Mr. Berger during the time he was taking those Christmas trees to desist in doing so? A. I did not.

Q. Did you ever tell Mr. Belk during that time to see that Mr. Berger desisted from taking off Christmas trees? A. I did not. . . . Q. You stated that you thought at that time, at least, that Mr. Belk had the right to take Christmas trees? A. Well, I will admit having said so. . . . Q. Do you remember when you first became aware of the agreement that Belk had made with Berger concerning the cutting of these trees by Berger? A. I can't remember the date, but I met him on the street in Olympia, possibly around the end of September of that year. Q. Met whom? A. The older Belk. Q. And he told you at that time that he had made some arrangements with Berger? A. He said, 'I had to get rid of your Christmas trees to get free of Berger.' Q. You knew at that time that Berger and Belk had settled up and as part of their settlement Berger was to take the Christmas trees? A. I knew at that time, since Mr. Belk told me that, yes. Q. Off of this property here on Hartstine Island? A. Yes. Q. You gave no orders at that time to Belk to see that they weren't taken? A. No, I didn't."

Appellants' third assignment of error is purely formal.

Appellants' fifth and last assignment of error is:

"The trial court erred in entering judgment awarding recovery in any amount, other than nominal, to respondent on his cross-complaint."

The finding of fact made by the trial court in support of the judgment, to which no adequate exception has been taken, is as follows:

"The court further finds that on the first of July, 1952 there remained on the above described premises additional logs, some of which were felled and bucked, which could have been removed from said premises by the defendant Belk had said writ of attachment not been issued. The court finds that had said writ of attachment not been issued the defendant Logan I. Belk would have been able to remove from said premises an additional eighty thousand feet of logs, and that on said logs he would have made a net profit of $30.00 per M feet, and that by reason of the wrongful issuance of said writ of attachment the defendant Logan I. Belk has been damaged in the total amount of $2400.00."

The judgment is affirmed.

GRADY, C. J., HAMLEY, FINLEY, and OLSON, JJ., concur.