[No. 7439–3–I.   Division One.   October 6, 1980.]

JOYCE PRANTE, ET AL, *Appellants,* v. KENT SCHOOL DISTRICT NO. 415, ET AL, *Respondents.*

FEDERAL WAY EDUCATION ASSOCIATION, ET AL, *Appellants,* v. FEDERAL WAY SCHOOL DISTRICT NO. 210, ET AL, *Respondents.*

AUBURN EDUCATION ASSOCIATION, ET AL, *Appellants,* v. AUBURN SCHOOL DISTRICT NO. 408, ET AL, *Respondents.*

HIGHLINE EDUCATION ASSOCIATION, ET AL, *Appellants,* v. HIGHLINE SCHOOL DISTRICT NO. 401, ET AL, *Respondents.*

RENTON EDUCATION ASSOCIATION, ET AL, *Appellants,* v. RENTON SCHOOL DISTRICT NO. 403, ET AL, *Respondents.*

*Schneider, Smythe, Salley, Van Siclen & Reynolds, Robert C. Van Siclen,* and *Pinckney M. Rohrback,* for appellants.

*John Binns, Jr., J. Richard Quirk, William A. Coats, George W. Akers,* and *Christopher L. Hirst,* for respondents.

DORE, J.—Plaintiffs are (1) schoolteachers and other nonsupervisory certified employees employed by defendant school districts, or (2) education associations which are recognized bargaining agents for the individual plaintiffs under the Education Employment Relations Act. We will refer to these parties as "teachers" or "plaintiffs." The defendant school districts are situated in south King County and are political subdivisions of the State of Washington. The named defendants are superintendents of the respective school districts.

The teachers filed parallel suits against five school districts, claiming that they were each entitled to one paid vacation day of their choice per year (the "floating" holiday) pursuant to RCW 1.16.050.[1] They asked for payment

---

[1]RCW 1.16.050, "Legal holidays," in pertinent part, read as follows at the time this suit was filed:

"The following are legal holidays: Sunday; the first day of January . . .; the twelfth day of February . . .; the third Monday of February . . .; the last Monday

for the 1976–77 and 1977–78 school years for these vacation days which were not taken.

Plaintiffs and defendants below stipulated to relevant facts and filed cross motions for summary judgment. The trial court granted defendants' motion and dismissed plaintiffs' complaint. Plaintiffs appealed.

## ISSUE

Does the "floating" holiday provision of RCW 1.16.050 apply to public schoolteachers?

## FACTS

Each of the defendant school districts and its corresponding plaintiff education association entered into collective bargaining agreements for the 1976–77 and 1977–78 school years pursuant to RCW 41.59, the Education Employment Relations Act. Each agreement stated that the teachers would work a given number of "contract" days including 180 "student" days.[2] The annual salary of each teacher, established by the applicable collective bargaining agreement, was based on experience and educational achievement of individual teachers. The plaintiffs and defendants agreed that the salary set forth in the pertinent

---

of May . . .; the fourth day of July . . .; the first Monday in September . . .; the eleventh day of November . . ; the fourth Thursday in November . . .; the day immediately following Thanksgiving Day; and the twenty–fifth day of December, . . .

"Employees of the state and its political subdivisions . . . shall be entitled to one paid holiday per calendar year in addition to those specified in this section. Each employee of the state or its political subdivisions may select the day on which the employee desires to take the additional holiday provided for herein after consultation with the employer pursuant to guidelines to be promulgated by rule of the appropriate personnel authority, or in the case of local government by ordinance or resolution of the legislative authority.

". . .

"Nothing in this section shall be construed to have the effect of adding or deleting the number of paid holidays provided for in an agreement between employees and employers of political subdivisions of the state . . ."

[2]These are days when the teachers have contact with students. The remaining contract days provide for the opening and closing of school and in–service training. These latter days numbered from 2 to 5 among the defendant school districts.

salary schedules would be full compensation for the services normally performed by a teacher for all contract days specified in the pertinent school calendar.

Subsequent to the execution of the collective bargaining agreements a school calendar, indicating contract days, was developed and adopted by the board of directors of each defendant school district. Under the school calendars, no teacher was required to perform contract services for the holidays enumerated in RCW 28A.02.061.[3]

The Washington Attorney General issued Attorney General Opinion, January 11, 1977, concerning the amendatory legislation, Laws of 1975, 2d Ex. Sess., ch. 24, which became effective February 20, 1976. Section 1 of this legislation amended RCW 1.16.050 (the legal holidays statute), and section 2 amended RCW 28A.02.061 (the school holidays statute). The legal holidays statute was further amended in 1977, Laws of 1977, 1st Ex. Sess., ch. 111, § 1.

DECISION

FLOATING HOLIDAY PROVISION NOT APPLICABLE TO
PUBLIC SCHOOLTEACHERS

Plaintiffs rely on the following portion of RCW 1.16.050, establishing the so–called "floating" holiday: "Employees of the state and its political subdivisions . . . shall be entitled to one paid holiday per calendar year *in addition to* those [other legal holidays] specified in this section." (Italics ours.) Plaintiffs argue that since school districts are political subdivisions of the State, employees of those districts

---

[3]RCW 28A.02.061, "School holidays," provides in part:

"The following are school holidays, and school shall not be taught on these days: Saturday; Sunday; the first day of January . . .; the third Monday in February . . .; the last Monday in May . . .; the fourth day of July . . .; the first Monday in September . . .; the eleventh day of November . . .; the fourth Thursday in November . . .; the day immediately following Thanksgiving Day; the twenty–fifth day of December . . .: *Provided,* That no reduction from the teacher's time or salary shall be made by reason of the fact that a school day happens to be one of the days referred to in this section as a day on which school shall not be taught."

are clearly included within the statute. We would be persuaded by this argument but for the "in addition to" language emphasized above.

■ The school holidays statute determines those holidays on which the schools will be closed. The legal holidays statute, on the other hand, has no effect on the closure of schools. Not all school holidays are legal holidays, and vice versa. During the 1975–76 school year, for example, there were three legal holidays under RCW 1.16.050 which did not coincide with school holidays established by RCW 28A-.02.061. The schools were conducted on those three legal holidays.

The two holidays statutes, as amended, now coincide except for the following: (1) Saturdays are school, but not legal, holidays; (2) February 12 is a legal, but not a school holiday; (3) if a legal holiday falls on a Sunday, the following Monday is a legal holiday; there is no corresponding provision in the school holidays statute; (4) if a legal holiday falls on a Saturday, the preceding Friday is a legal holiday; and (5) the school holidays statute has no "floating" holiday provision.

■ Teachers are not entitled to the 10 legal holidays enumerated in the first paragraph of RCW 1.16.050. Unless those are used as a basis upon which to build the additional holiday provided in paragraph 2, that latter "floating" holiday is not applicable to teachers. To hold otherwise would render the "in addition to" language meaningless. Each clause, sentence and word of a statute should be construed so that no part is rendered superfluous. *State v. Willis,* 5 Wn. App. 441, 487 P.2d 648 (1971).

Plaintiffs contend, alternatively, that the "in addition to" language renders the statute ambiguous. We disagree. However, legislative intent, manifested from legislative journals, supports our holding that teachers are not entitled to the floating holiday.

We begin with a brief history of the two statutes in question. Before 1899, the school holidays were the legal holidays. Laws of 1897, ch. 118, § 56. In 1899, the statute

was amended to provide for specific school holidays, and delete references to legal holidays. Laws of 1899, ch. 142, § 12. Since that time legal holidays and school holidays have varied. Although the most recent amendments to the legal and school holidays statutes have reduced the discrepancies between the two statutes, some differences still remain. (See page 379, *supra*.)

When legislative intent is at issue, the whole act rule requires that the entire statute, not merely designated parts, be reviewed. Sections 1 and 2 of Laws of 1975, 2d Ex. Sess., ch. 24 must be considered together. *Graham v. State Bar Ass'n,* 86 Wn.2d 624, 627, 548 P.2d 310 (1976); *State v. Rinkes,* 49 Wn.2d 664, 667, 306 P.2d 205 (1957); *DeGrief v. Seattle,* 50 Wn.2d 1, 11, 297 P.2d 940 (1956).

Section 1 enumerates the legal holidays. This portion of the statute, excluding the floating holiday provision, is not self–executing. It merely states which days are to be "legal" holidays but gives no indication as to the effect of such a label. Section 2 enumerates the school holidays and states that school is to be closed on these days. Plaintiffs view section 2 as executive legislation drawn to implement the nonself–executing provision of section 1. Plaintiffs have not offered any support for this argument, nor have we found any. If the school holidays statute was intended as implementing legislation, the holidays would be identical in each, or there would be some reference or direction to that effect.

We read chapter 24, sections 1 and 2 as being mutually exclusive. The legal holidays section is addressed to one matter, and the school holidays section to another. To impose upon section 2 the holidays from section 1, in the name of the whole act rule, would strain the language of both sections and convolute the purpose of the rule. We decline to do so.

The legislative history of chapter 24 shows that the floating holiday was not created in a vacuum; instead, it was intended to prospectively pacify state employees who might complain because one legal holiday was being eliminated by the legislation. Chapter 24 originated as

Engrossed Substitute Senate Bill No. 2996, 44th Legislature (1975), and was referred to the Committee on State Government, chaired by Senator A. L. Rasmussen. In answer to the question of whether the number of legal holidays (which had been 11) was to be changed by the proposed law, he answered:

"There has been *no change in the number of holidays.* What you will have under the bill is general election day as a holiday is stricken, and moved over to the day after Thanksgiving. Columbus Day will no longer be a legal holiday, but in lieu of that the employee will be able to select some other day of his choice to take that day off. There is no change in the number of holidays.

(Italics ours.) Senate Journal, 44th Legislature (1975), at 524–25. Thus, the purpose of the floating holiday was to *give to those employees affected by the legal holidays statute* their 11th holiday, since Columbus Day was no longer to be considered a legal holiday. Columbus Day was never a school holiday enumerated in RCW 28A.02.061, and therefore the substitution of the floating holiday for the removal of Columbus Day does not apply to teachers.

In discussing the school holiday section of chapter 24, the following dialogue occurred on the Senate floor:

[Senator Mardesich] . . . Senator Bottiger, although we simply would be coordinating the school holidays with the state holidays, are we by this action, in fact, granting to the schools additional holidays over those which they now have?"

[Senator Bottiger] "No, Senator Mardesich. We are simply changing the single day that is in conflict, that being the fourth Monday in October to the eleventh day in November, being Veterans' Day. That is all the amendment does and that brings that into line with that holiday on the state level."

Senate Journal, 44th Legislature (1975), at 338. Thus, the bill being considered provided for no additional holidays to schools.

We have conducted an independent inquiry into the appropriations which the legislature made in the 1975–76 sessions. If the floating holiday provision was applied to

teachers, there was no provision by the 1975 legislature to provide the funds to pay for the additional holiday for the 40,000 teachers of the state.

The 1975 appropriations bill strongly supports legislative intent that the legislature did not intend the floating holiday for teachers, otherwise they would have supplied the funds for their payment.

Toward the end of the legal holidays statute, there was an explanation of the effect of that statute on certain employees who work under specific contracts. It follows:

> Nothing in this section shall be construed to have the effect of adding or deleting the number of paid holidays provided for in an existing agreement between employees and employers of political subdivisions of the state.[4]

Laws of 1975, 2d Ex. Sess., ch. 24, § 1. That language was added to Engrossed Substitute Senate Bill No. 2996 in the House on February 12, 1976. Thus, that sentence was not a part of the bill when the following point of inquiry was heard in the Senate on February 6, 1976:

> [Senator Wilson] . . . Senator Grant, I guess I am asking this question of you as one of the resident labor experts in the body. Public employees of many jurisdictions have collective bargaining agreements with counties and other entities of government. I would presume that some of these agreements, at least, set forth paid holidays throughout the year. Now, if the passage of this bill should produce a roster of state holidays different in some respects from the roster of holidays agreed to in the

---

[4]The teachers contend that the inclusion of the word "existing" in the quoted section above operates to exempt plaintiffs from the category of employees to which the sentence is directed. They argue that their employment contracts were not "existing" as of the effective date of chapter 24, February 20, 1976. We are not persuaded by this argument. Exhibit B to the agreed statement of facts, stipulated to by all parties, contains copies of the collective bargaining agreements entered into between plaintiffs and defendant school districts from the 1971–72 school year through and including the 1977–78 school year. Pursuant to RCW 28A.67.070, the teachers' contracts must be for 1 year's duration. The fact that all of the contracts were not technically "in existence" on February 20, 1976, is insignificant. The parties have placed all the contracts (1971–78) before this court. We also note that this language was changed by the 1977 amendments which deleted the word "existing."

agreement, would we have a situation then where the employees could rightfully say, 'we are entitled to the holidays that you, our employers, have agreed to and, in addition, we are entitled to the new holidays which have been created by this new state law?'"

[Senator Grant] "Senator Wilson, members of the Senate, frankly, I was going to possibly bow out of this one because of potential conflict of interest. I usually enjoy all the same holidays as my members, and while this is a good bill for me, I guess I probably don't gain any more advantage than any member of the class to which I belong. Yes, Senator Wilson, many local governmental units have contracts that provide for specified holidays which include, because they have been negotiated, days like Election Day, days like Columbus Day, because they were mandated by the state anyway. Many of our contracts provide, in addition, that any holiday that is recognized by the state shall also be granted. So, we will, by the passage of this Act in many instances have, in spite of what you are doing, in local government we will have Election Day, Columbus Day, the day after Thanksgiving, a floating holiday and any other days that may be designated by the chief executive by proclamation. It is a good bill, I certainly want to endorse it."

Senate Journal, 44th Legislature (1975), at 336–37. Although Senator Grant's comments are somewhat ambiguous,[5] it appears his understanding of the meaning of this statute was to give the floating holiday to all state employees. The addition of the House amendment quoted above, which was passed by the Senate on February 17, 1976, eliminated any ambiguity in that regard. Teachers, and other state employees who enter into separate contracts, will not have their negotiated holidays enlarged or reduced by this legislation.

Finally, we come to the Attorney General's opinion and its import. Attorney General Opinion, January 11, 1977,

---

[5]Will the employees under separately bargained for contracts receive the benefit of the legal holidays only if their contracts provide that they will receive all holidays recognized by the state? Or, will all state employees, whether or not under separately bargained for contracts, have all the legal holidays specified?

was directed to the question of whether *all* the legal holidays enumerated in RCW 1.16.050 were to be paid holidays for state employees. The Attorney General stated that the "floating" holiday was the only paid holiday to which the state employees were statutorily entitled. The other "legal" holidays would be paid vacation days only if so provided by their employment contracts whether formal or informal.

In the final paragraph of this opinion, the Attorney General addresses Laws of 1975, 2d Ex. Sess., ch. 24, § 2 (amending the school holiday statute). He states that public schoolteachers

> *will, in addition, also* be covered by RCW 28A.02.061 . . . Therefore, because of the proviso to that statute[6] they will be entitled to be paid for any school holidays as enumerated therein which correspond with what would otherwise be a normal school day."

(Italics ours.)

█ The Attorney General's opinion as to schoolteachers is unsupported by analysis. It encompasses one paragraph of an 8–page opinion. Although the opinion discusses at length which legal holidays are to be paid holidays, there is no discussion of the impact of the legal holiday statute on the school holiday statute, except the conclusionary last paragraph of his opinion. In addition, the paragraph immediately preceding the quoted portion above can be read to exclude teachers from the "floating" holiday provision. In part, that paragraph follows:

> Thus, in each of the hypothetical cases referred to in your letter the ultimate answer to the employees involved (if other than public school teachers) is that they are all now statutorily entitled to one paid day off of their choice each year and then, in addition, they are entitled to those "paid" holidays which are provided for by the particular contract or equivalent compensation policies by which they are covered.

---

[6]"*Provided,* That no reduction from the teacher's time or salary shall be made by reason of the fact that a school day happens to be one of the days referred to in this section as a day on which school shall not be taught." RCW 28A.02.061.

Attorney General Opinion, January 11, 1977, at 8. Opinions of the Attorney General are not binding on the court and they have been disregarded by the court. *Davis v. King County,* 77 Wn.2d 930, 468 P.2d 679 (1970); *Kasper v. Edmonds,* 69 Wn.2d 799, 420 P.2d 346 (1966). We are not persuaded by the Attorney General's reasoning or his conclusion.

Furthermore, the legislature repudiated the Attorney General's interpretation of the applicability of the "floating" holiday to schoolteachers. The repudiation was made at the next legislative session following the Attorney General's opinion. One year after the enactment of chapter 24, the legislature made the following changes to the "floating" holiday portion of RCW 1.16.050:

> Employees of the state and its political subdivisions, except employees of school districts and except those nonclassified employees of institutions of higher education who hold appointments or are employed under contracts to perform services for periods of less than twelve consecutive months, shall be entitled to one paid holiday per calendar year in addition to those specified in this section.

Laws of 1977, 1st Ex. Sess., ch. 111, § 1.

Although there is a presumption that new legislation is an amendment, rather than a clarification of the existing law, such presumption may be overcome by the surrounding circumstances. *Johnson v. Morris,* 87 Wn.2d 922, 926, 557 P.2d 1299 (1976). This court held that the legislative clarification rule applied in *Sears, Roebuck & Co. v. King County,* 5 Wn. App. 273, 487 P.2d 221 (1971). There, an Attorney General opinion interpreted the statute in question, and at the next legislative session a clarification (or change) in the law was made. Similarly, in *Davenport, Inc. v. Department of Revenue,* 6 Wn. App. 581, 494 P.2d 1376 (1972), the court found that the combination of the quickness of the legislature's action to repudiate an amended revenue ruling, in addition to its acquiescence

prior to that amended ruling, was persuasive evidence that the legislature was clarifying, not amending its prior law.

Plaintiffs urge this court to apply the presumption that subsequent legislation is amendatory rather than interpretive. They attempt to distinguish *Sears* and *Davenport* because in both of those cases the State had acquiesced in a long–standing policy which was (in the former) repudiated by an Attorney General opinion, and (in the latter) repudiated by a Department of Revenue ruling. We are not convinced.

In the case at bar, the legislature had no opportunity to acquiesce in an administrative interpretation because until Attorney General Opinion, January 11, 1977, was issued, there had not been an administrative interpretation on the subject. Prior legislative acquiescence therefore is impossible to prove and unnecessary in order to establish the repudiation argument. Additionally, the vote of the legislature on the 1977 amendments to RCW 1.16.050 is informative. The new language was proposed in the Senate on April 21, 1977, and passed the same day by a vote of 42 to 1. The House passed it on May 20, 1977, by a vote of 85 to 0.

CONCLUSION

We hold that RCW 1.16.050, which established a floating holiday for certain state employees, was not applicable to public schoolteachers.

Affirmed.

SWANSON and ANDERSEN, JJ., concur.

Reconsideration denied November 12, 1980.

Review denied by Supreme Court February 13, 1981.