[No. 50784-8.   En Banc.   January 3, 1985.]

THE PORT OF EDMONDS, *Respondent*, v. THE PUBLIC
EMPLOYMENT RELATIONS COMMISSION, ET AL,
*Appellants.*

*Kenneth O. Eikenberry, Attorney General,* and *Richard A. Heath, Senior Assistant,* for appellant State.

*Lawrence Schwerin* and *Hafer, Price, Rinehart & Schwerin,* for appellant Service Employees Union.

*Bruce Michael Cross, Perkins, Coie, Stone, Olsen & Williams,* and *Richard Cole,* for respondent.

*Thomas A. Lemly* and *Stephen M. Rummage* on behalf of Public Utility District No. 1, amici curiae for respondent.

DOLLIVER, J.—The only question we must resolve in this appeal is whether the mandatory collective bargaining laws

set forth in RCW 41.56, and enforced by the Public Employment Relations Commission, apply to employees of the Port of Edmonds.

Defendant Service Employees International Union, Local 120 represents employees of the Port. As authorized by statute, plaintiff Port owns and leases certain property on the Edmonds waterfront. In July 1977 the Port entered into negotiations with the Union. From the outset, the Port had advised the Union as to the possible future leasing of Port facilities. In November 1978, the Port began in earnest to consider leasing its facilities to third parties and to discontinue its self–managed operations. A 5–year lease was entered into which began May 1, 1979. The parties agree the lease was not motivated by antiunion sentiment.

Subsequent to the leasing all but two members of the bargaining unit were laid off. Efforts were made by the Union to convince the Port to rescind its leases and submit to bargaining in connection with the effects of the leasing arrangement. The Port refused; there were no negotiations.

The Union filed an unfair labor practices complaint with the Public Employment Relations Commission (PERC) alleging the Port failed to notify and bargain with the Union in connection with the Port's decision to lease its facilities and the resulting layoffs of the Union members. The PERC examiner held that under RCW 41.56 PERC had jurisdiction over labor matters arising at the Port. The examiner further held the Port did not fulfill its bargaining obligations when it unilaterally leased Port facilities to a third party. PERC affirmed the ruling of the examiner.

Pursuant to the administrative procedure act, RCW 34.04, the Port filed a petition in superior court requesting judicial review of the PERC decision. RCW 34.04.130. The court reversed PERC concluding PERC did "not have jurisdiction over the Port under the provision of RCW Chapter 41.56, and RCW Chapter 41.56 does not apply to the Port." In the alternative, the trial court held (1) the Port did not under RCW 53.18 have a duty to bargain with the Union in connection with the leasing of its facilities; (2)

even if the question of leasing Port facilities was a mandatory subject of bargaining, the Port fulfilled its bargaining obligation on that question; (3) in any event the order of PERC directing the Port to terminate the lease, reinstate its employees, and compensate them for all lost income was beyond the authority of PERC and violated Const. art. 1, § 23. The Union and PERC now seek direct review of the decision of the trial court.

Although all issues are discussed by the parties in their briefs, the only issue we need decide is the question of whether PERC has jurisdiction over the Port. We hold it does not and affirm the trial court.

Collective bargaining for public employees is mandated by RCW 41.56. The application of this legislation is defined by RCW 41.56.020:

> This chapter shall apply to any county or municipal corporation, or any political subdivision of the state of Washington *except as otherwise provided by* RCW 47.64.031, 47.64.040, 54.04.170, 54.04.180, and chapters 41.59 and *53.18 RCW.*

(Italics ours.) RCW 47.64.031 and .040, referring to marine employees public relations, were repealed by Laws of 1983, ch. 15, § 31, p. 238; RCW 54.04.170 and .180 concern public utility districts; RCW 41.59 is the educational employment relations act; RCW Title 53 concerns port districts; RCW 53.18 deals with employment relations for port districts. Our task in this case is to determine what the Legislature intended when it included "except as otherwise provided by . . . 53.18 RCW" in the PERC statute, RCW 41.56. We conclude the Legislature intended to exempt Port employees from the mandatory bargaining provisions of RCW 41.56.

■■ In construing the legislative intent as to the meaning of RCW 41.56.020, we look first to *Roza Irrig. Dist. v. State,* 80 Wn.2d 633, 640–41, 497 P.2d 166 (1972), where we held RCW 41.56 applied to irrigation districts. Noting that RCW 41.56 was remedial legislation which contained several enumerated exceptions, one of which is

RCW 53.18, we held the statute must be construed liberally. Pertinent to the present case is the way in which the *Roza* court construed RCW 41.56 and its exceptions. The court stated:

[A] term which is restricted by an exception must have been used with the understanding that it was broad enough to include the exception, else engrafting the exception would have been an unnecessary and meaningless act.

*Roza,* at 641; 82 C.J.S. *Statutes* § 377 (1953). The court further noted the RCW 41.56 exceptions were intended to supersede and not to complement RCW 41.56. As the court stated:

The reason for each of these exceptions is easily discerned, since the cited statutes contain other provisions for employer–employee relations procedures and remedies.

*Roza,* at 640.

The construction by the *Roza* court of RCW 41.56 and its exceptions indicates RCW 53.18 was intended to be an exception and not a complement to RCW 41.56 to the extent that the latter requires collective bargaining. We recently confirmed this construction in *Nucleonics Alliance, Local 1–369 v. WPPSS*, 101 Wn.2d 24, 28–29, 677 P.2d 108 (1984). *See also* Comment, *Public Employees' Bargaining Rights in Washington*, 14 Gonz. L. Rev. 197, 208–09 (1978) (noting that RCW 41.56 specifically excludes port districts).

The PERC statute (RCW 41.56) and the Port statute (RCW 53.18) were enacted nearly simultaneously by the Fortieth Legislature. Several events incident to the enactment of the PERC statute show legislators were keenly aware that RCW 41.56 did not apply to port districts.

As it was originally introduced in the House, the PERC statute did *not* except port districts. *See* House Bill 483, 40th Legislature (1967) (first reading). It only excepted the following: RCW 35.22.350 (utilities operated by first class cities); former RCW 47.64.030–.040 (marine employees);

RCW 54.04.170–.180 (public utility districts); and former RCW 28.72.010–.090 (school districts). On February 28, 1967, the Committee on Labor and Employment Security recommended certain changes to House Bill 483, including the addition of port districts (Senate Bill 34) to the list of exceptions. House Journal, 40th Legislature (1967), at 1492. After the amendments were read, a colloquy commenced. Representative Adams noted:

"Mr. Speaker, this one amendment involves both the employees of port districts and the schools, and it would require an amendment to this in order to divide this issue, or else you are going to put the port employees back in *and they are taken care of in the other Senate bill.*"

(Italics ours.) House Journal, *supra.* In response to Representative Adams' comment, Representative Humiston moved for adoption of the following amendment to the amendment:

Amend the amendment . . . by the Committee on Labor and Employment Security as follows: . . . strike ", and except as to any school district"[.]

House Journal, *supra.* House Bill 483 was then adopted by the House.

The Legislature's deletion of "and except as to any school district" (RCW 53.18) and retention of ports in House Bill 483 suggests the House believed RCW 53.18, referred to in the colloquy as "the Senate bill", would displace RCW 41.56 in the area of collective bargaining. As demonstrated by Representative Adams' comments on the floor, the Legislature did not want RCW 41.56 to cover ports since RCW 53.18, "the Senate bill", already covered them.

Another perspective from which RCW 41.56 may be viewed is the subsequent history of the other exceptions it contains. As noted above, RCW 41.56, in addition to ports, excepted public utility districts, school districts, marine employees, and first class city utilities. Although originally excepted from the strict collective bargaining requirements of RCW 41.56, in 1983 marine employees received the right

to bargain collectively. Senate Bill 3108, Laws of 1983, ch. 15, p. 218 (codified at RCW 47.64). When marine employees received this right, they were given that right in the marine employees–public employees statute, RCW 47.64. RCW 41.56 was *not* revised to reflect the fact that marine employees were subject to its provisions. This indicates the Legislature considered the marine employee statute an *exception* to RCW 41.56, *e.g.,* a statute setting forth labor laws independent of RCW 41.56.

 ·· This conclusion is supported, moreover, by the history of RCW 53.18 *after* this action was commenced. The 1983 Legislature in Substitute House Bill 434, now codified at RCW 53.18, provided that "[p]ort districts and their employees shall be covered by the provisions of chapter 41.56 RCW except as provided otherwise in this chapter." RCW 53.18.015. Thus, when the Legislature eventually gave port employees the right to bargain collectively, it did so by modifying RCW 53.18. It did not do so by merely deleting the port district "exception" in RCW 41.56. This implies the Legislature did not intend RCW 41.56 to be applied to ports in the first place.

The legislative history supporting the 1983 amendments to the Port statute corroborates this conclusion. The 1983 Final Legislative Report for Substitute House Bill 434 notes "[t]he port district employment relations law is limited in scope and has no provisions for binding arbitration." The report further notes that RCW 53.18.015 "*extended* to port district employees to the extent that it is not inconsistent with the port district employment relations law." (Italics ours.) Legislative Report, at 12. (The Legislative Report is an official publication derived primarily from committee reports.) *See* Comment, *Legislative History in Washington,* 7 U. Puget Sound L. Rev. 571, 598–99 (1984); it has been cited as evidence of legislative intent. *Johnson v. Continental West, Inc.,* 99 Wn.2d 555, 561–62, 663 P.2d 482 (1983); *Harris v. Robert C. Groth, M.D., Inc., P.S.,* 99 Wn.2d 438, 447 n.4, 663 P.2d 113 (1983).

The general rule is that new legislation is an amendment

rather than a clarification of existing law. *Prante v. Kent Sch. Dist. 415,* 27 Wn. App. 375, 385, 618 P.2d 521 (1980). There was nothing in the amending legislation indicating RCW 41.56 to be unclear. On the contrary, the Legislative Report noted the amending legislation was *extending* collective bargaining coverage to port employees. This position is also supported by the First Biennial Report Submitted to the 42nd Session of the Washington State Legislature by the Public Employees Collective Bargaining Committee in 1971, which stated:

It was the intent of the 1967 legislature to promulgate an act regulating the labor relations of all local governmental units of the State, except those expressly named and exempted in Section 2 [RCW 41.56.020].

First Biennial Report, at 11.

We are convinced from our analysis of both the statutory scheme and the legislative history of RCW 41.56 and RCW 53.18 that the mandatory collective bargaining provisions of RCW 41.56 do not apply to port districts; PERC, therefore, has no jurisdiction in this case.

Affirmed.

WILLIAMS, C.J., UTTER, BRACHTENBACH, DORE, DIMMICK, PEARSON, and ANDERSEN, JJ., and CUNNINGHAM, J. Pro Tem., concur.